PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. ROTH, *et al.*, | ) |
| Plaintiffs, | ) CASE NO. 5:17CV234 |
| | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| CITY OF CANTON, *et al*. | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 40 ] |

Pending before the Court is Plaintiffs' Motion for Preliminary and Permanent Injunction (ECF No. 40), filed in October 2017. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motion is granted.

## I. Background

On June 5, 2017, Plaintiffs Michael T. Roth, Julie Roth, Kaylyn Mazeall, and Joy Wagner filed a Third Amended Class Action Complaint against Defendants City of Canton, Ohio, Canton Police Department, Shirley Moore, John Doe Canton Police Officers, John Doe Canton Employees, and John Doe Canton Police Supervisors.[1] ECF No. 26. Thereafter, Plaintiffs filed the within motion for equitable relief. ECF No. 40.

---

[1] Pursuant to Plaintiffs' Fourth Amended Complaint, Plaintiff Toni Leach has been added to the lawsuit, while Plaintiff Kaylyn Mazeall has been dropped as a party. ECF No. 66.

(5:17CV234)

**A. Prior to May 3, 2017**

The City of Canton enacted ordinances limiting the number of cats and dogs in a residence. Prior to May 3, 2017, Canton Codified Ordinance 505.14: Keeping More Than Five Dogs or Cats read, in relevant part:

(a) Except as provided for in Section 505.15, no person residing within the City shall own, possess, harbor or keep more than five dogs or cats, or any combination thereof, on the premises of his residence or business at any one time, except that where litters have been borne to a residing animal, after they have been weaned, a four-month grace period shall be granted to permit the distribution of such young animals.

(b) This section shall not prohibit the City, through the Department of Health or other authority, from enforcing any laws or ordinances concerning the creation of nuisances through the maintenance of dogs or cats or other animals in numerous quantities.

[ECF. No. 42-1 at PageID: # 729, Stip. 1](). In addition, Canton Codified Ordinance 505.15 read in relevant part:

(a) No person shall be permitted to own, possess, harbor or keep more than five dogs or cats or any combination thereof in an area zoned residential except that where litters have been born to a residing animal, after they have been weaned, a four-month grace period shall be granted to permit the distribution of such young animals. Any person desiring to own, possess or keep more than five dogs or cats or any combination thereof at any one time, in an area zoned as business or industrial, with the exception of a litter or a portion of a litter of pups or kittens less than four months old, shall first obtain a permit from the City as provided in this section and shall additionally obtain such other licenses as may be required by the Ohio Revised Code.

[ECF No. 42-1 at PageID: # 729, Stip. 2]().

According to Defendants, a prosecution under either ordinance is a multi-phase process which generally involves: (1) a party making a complaint to a License Technician, typically

2

(5:17CV234)

Defendant Shirley Moore; (2) the License Technician sending a letter to the person residing at the home warning her that she is violating an ordinance; and (3) a follow-up visit to the property at least 30 days after the letter is sent to determine if the resident is still in violation of the ordinance. If the resident is still in violation, the License Technician and a police officer take the information to a prosecutor. ECF. No. 44 at PageID: # 740-41.

Plaintiff Julie Roth was sent a letter on March 11, 2015, which informed her that she violated Canton Codified Ordinance 505.15. ECF. No. 44 at PageID: # 741. Plaintiff Julie Roth owns five dogs. *See* ECF. No. 66 at PageID: # 2526, ¶ 29. Plaintiff Michael T. Roth, who lives with Plaintiff Julie Roth, owns two dogs and two cats. During a follow-up visit in September 2016, Defendant Shirley Moore saw seven dogs and two cats in Plaintiff Julie Roth's backyard. ECF No. 44 at PageID #: 741. On September 25, 2016, Defendants filed a criminal complaint against Plaintiff Julie Roth in the Canton, Ohio Municipal Court, No. 2016 CRB 04547, charging her with a violation of Canton Codified Ordinance 505.15. ECF. No. 40-2 at PageID: # 694. After a jury trial, Plaintiff Julie Roth was found guilty of violating Canton Codified Ordinance 505.15. ECF. No. 44 at PageID: # 740-41.

**B. Since May 3, 2017**

On April 3, 2017, the Canton City Council amended Ordinance 505.14, which became effective on May 3, 2017. ECF. No. 42-1 at PageID: # 729, Stip. 3; ECF. No. 66 at PageID: # 2538, ¶ 57. The amended Ordinance 505.14 now states:

(a) Except as provided in Section 505.15, a person may not possess, keep, harbor, or permit to be possessed, kept, or harbored in or about any dwelling unit or structure under their control a total of more than five dogs or cats, in any combination, over four months of age. "Harbor" means to

3

(5:17CV234)

>> give shelter or refuge to. "Dwelling unit" and "structure" are defined in Chapter 1123.
>
> (b) Any person who violates any provision of this section is guilty of a misdemeanor of the third degree."

ECF. No. 42-1 at PageID: # 729, Stip. 4; ECF. No. 66 at PageID: # 2538, ¶ 58.

Plaintiffs seek (1) to enjoin enforcement of Canton Codified Ordinance 505.14 and (2) a declaration that the law is unconstitutional under the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. ECF. No. 66 at PageID: # 2522, ¶ 1.

## II. Legal Standard

In determining whether a preliminary injunction is appropriate, a court must consider the following: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury without the injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuance of the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). These factors are not prerequisites to be met, but must be balanced against each other. *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). In addition, while the absence of one factor may weigh heavily in the balance, it does not dictate the balance. *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017).

The Sixth Circuit does not require a heightened evidentiary burden when the moving party seeks a mandatory injunction, one that alters the status quo by ordering the performance of

4

(5:17CV234)

an act, as opposed to a prohibitory injunction that maintains the status quo. *United Food & Comm. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (holding that the balance of equities standard for granting injunctive relief applies in cases seeking either mandatory or prohibitory injunctive relief). At the same time, however, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Leary*, 228 F.3d at 739 (internal quotation marks and citations omitted; brackets in original).

### III.  Discussion

**A.  Standing**

As an initial matter, the Court must consider whether Plaintiffs have standing. Plaintiffs challenge the constitutionality of the amended Codified Ordinance 505.14 (hereinafter "the Ordinance") ECF. No. 66 at PageID: # 2522, ¶ 1. Plaintiffs allege the Ordinance: (1) is void for vagueness; (2) denies Plaintiffs the Freedom of Association guaranteed under the First Amendment of the U.S. Constitution; and (3) criminalizes status. ECF No. 66 at PageID #: 2523, ¶¶ 6-12.

Standing is the threshold question in every federal case and limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *United States. v. Students Challenging Reg. Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973). At issue here is

5

(5:17CV234)

constitutional standing. The requirements for constitutional standing are: (1) proof of injury in fact, (2) causation, and (3) redressability. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999). Plaintiffs bear the burden of demonstrating standing and pleading each component with specificity. *Id.*

Plaintiffs' injury must be an injury-in-fact, meaning an invasion of a legally protected interest, which is (a) concrete and particularized and (b) actual or imminent (not conjectural or hypothetical). *Crawford v. U.S. Dept. of Treas.*, 868 F.3d 438, 453 (6th Cir. 2017), *cert. denied sub nom.*, *Crawford v. Dept. of Treas.*, 138 S. Ct. 1441 (2018). Concreteness requires the injury to be real, and not abstract, while particularization requires that Plaintiffs personally be affected by some actual or threatened injury, as opposed to a generalized grievance. *Spokeo, Inc. v. Robins*,136 S. Ct. 1540, 1548 (2016). A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Although most federal claims assert allegations that the plaintiff has suffered a past injury, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Kiser v. Reitz*, 765 F.3d 601, 607-608 (6th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*,134 S.Ct. 2334, 2341 (2014)). A plaintiff satisfies this requirement when he alleges "[(1)] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [(2)] there exists a credible threat of prosecution thereunder." *Kiser*, 765 F.3d at 608 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

6

(5:17CV234)

**1. Void for Vagueness**

Pursuant to the Fourth Amended Class Action Complaint, filed on April 27, 2018, Plaintiffs allege that Plaintiff Julie Roth currently resides with Plaintiff Michael T. Roth and their seven dogs and two cats, potentially leaving both individuals amenable to be in violation of the Ordinance. ECF No. 66 at PageID #:5, ¶¶ 27, 28. These Plaintiffs are arguably engaging in conduct proscribed by the Ordinance since they have more than five dogs or cats under their control. Additionally, the record indicates that Defendants have enforced Canton Codified Ordinance 505.15 against Plaintiff Julie Roth in the past. ECF No. 66 at PageID #: 37, ¶ 189. Similar to *Kiser*, in which the court found that a plaintiff receiving an enforcement letter and response from a board threatening to impose sanctions resulted in a credible fear of prosecution, Plaintiff Julie Roth's past criminal proceedings and enforcement letter create a credible fear of prosecution under the Ordinance. 765 F.3d at 609. Accordingly, the Court finds that Plaintiffs have met the injury-in-fact requirement because they allege an intention to engage in conduct arguably affecting a constitutional interest, proscribed in the Ordinance, and have a credible threat of prosecution thereunder. Since the threatened enforcement of the allegedly vague ordinance inhibits Plaintiffs due process rights, and the injury can be redressed by enjoining enforcement of the Ordinance, the Court finds that Plaintiffs have met all the requirements necessary to have standing to assert the void for vagueness claim.

**2. Freedom of Association**

Next, Plaintiffs argue that because visitors or intimate partners, who own dogs or cats, cannot bring their own pets to another home in the City of Canton without violating Section

7

(5:17CV234)

505.14, the Ordinance violates Plaintiffs' First Amendment Right of Association. ECF No. 40-1 at PageID: # 661-62. The record indicates that Defendants have not enforced the Ordinance against individuals who stay at each other's home overnight and, therefore, Plaintiffs cannot demonstrate past injury. Therefore, to meet the injury-in-fact requirement, Plaintiffs must allege an intention to engage in conduct proscribed by the Ordinance and have a credible threat of prosecution thereunder. *Kiser*, 765 F.3d at 608. Because they do not demonstrate a credible threat of prosecution for visiting one another's homes with pets in tow, Plaintiffs have not alleged an injury-in-fact. Therefore, they lack standing to assert the Freedom of Association claim.

### 3. Status

Lastly, Plaintiffs argue that although under Ohio law a landlord is not in control of a premises which he rents to a tenant, Defendants punish landowners based on status when they send enforcement letters informing them that they are responsible for violating the Ordinance. ECF No. 40-1 at PageID: # 662. Plaintiffs allege that the Ordinance has been applied to landlords by referring to an enforcement letter sent to Greg Swift. ECF No. 66 at PageID #: 2562, ¶¶ 221-24. None of the plaintiffs, however, allege that they are landlords (or intend to be landlords), and it is well-established that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. Thus, since Plaintiffs fail to allege an intention to engage in conduct arguably affecting a constitutional interest, Plaintiffs have not met the injury-in-fact requirement, and accordingly lack standing to bring this claim.

(5:17CV234)

## B. Likelihood of Success on the Merits

Having found that Plaintiffs have standing to sue on their void for vagueness claim, the Court shall assess the likelihood of success on the merits that claim.

Plaintiffs argue that the Ordinance is unconstitutionally vague, as applied to them, because the Ordinance fails to provide adequate notice and because Defendants have no rules, regulations, guidelines, standards or procedures set forth to govern their interpretation of the Ordinance. *See* ECF No. 66 at PageID #: , ¶¶ 6-7. Specifically, Plaintiffs argue that the Ordinance's construction and Defendants' failure to define terms, arbitrary and discriminatory enforcement, and misleading application of the words in practice renders the Ordinance void for vagueness. ECF No. 40-1.

The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void for vagueness doctrine. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). Where, as here, "the first amendment is not implicated, a 'void for vagueness' challenge must be unconstitutional as applied to the defendant and 'must be examined in light of the facts of the case at hand.'" *United States v. Levy*, 904 F.2d 1026, 1032 (6th Cir.1990) (quoting *United States v. Barnes,* 890 F.2d 545, 552 (1st Cir. 1989), *cert. denied*, 494 U.S. 1019 (1990)). Thus, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Cohoon v. Rees*, 820 F.2d 784, 786 (6th Cir. 1987) (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). For an ordinance to be constitutional, it must (1) define the offense with sufficient definiteness that ordinary people can understand what is prohibited and (2) establish standards to permit police to enforce the law in a

9

(5:17CV234)

non-arbitrary, non-discriminatory manner. *Belle Maer Harbor v. Charter Twp. Of Harrison*, 170 F.3d 553, 557-59 (6th Cir. 1999) (holding that an ordinance allowing an inspecting officer to determine what constitutes a "reasonable radius" was unconstitutionally vague).

### 1. Definiteness

Sixth Circuit precedent requires that the language of a criminal statute must sufficiently convey a definite warning as to the proscribed conduct, when measured by common understanding and practices, although impossible standards of specificity are not required. *Stout v. Dallman*, 492 F.2d 992, 994 (6th Cir. 1974).

Plaintiffs argue that because "or" is used between "possess, keep, harbor, or permit to be possessed," the Ordinance does not authorize Defendants to accumulate the various means to violate the Ordinance. ECF No. 40-1 at PageID #: 651. Defendants respond that when "not" precedes a list with "or" being used, the singular negation effect turns the list from disjunctive to conjunctive. ECF No. 44 at PageID #: 744.

Under Plaintiffs' interpretation, a person possessing four cats, keeping four dogs, and harboring four dogs would not violate the Ordinance. A fair reading of the Ordinance, however, does not comport with this interpretation. Since the Ordinance states that "a person may not possess, keep, harbor, or permit to be possessed . . . *a total of more than* five dogs or cats," the Court finds that a potential violator is put on notice that the *total* number of animals an individual can keep, harbor, or possess, is limited to five. ECF No. 42-1 at PageID #: 729, Stip. 4 (emphasis added).

(5:17CV234)

Next, Plaintiffs argue that by failing to define "own," "possess," "keep," or "harbor," ordinary people cannot fully understand what conduct is prohibited under the Ordinance. ECF No. 40-1 at PageID #: 653. Defendants contend that since "own" is no longer in the Ordinance, and "harbor" is defined in the Ordinance as "to give shelter or refuge to," the only terms left to define are "possess" and "keep." ECF No. 44 at PageID #: 745; ECF No. 42-1 at PageID #: 729, Stip. 4. Because "possess" and "keep" are within the grasp of ordinary people, according to Defendants, the failure to define these words does not render the Ordinance void for vagueness. ECF No. 44 at PageID #: 745.

Generally, "failure to define a term within a statute or ordinance does not render the statute unconstitutionally vague, where the common meaning of the word provides both adequate notice of the conduct prohibited and of the standards for enforcement." Belle Maer Harbor, 170 F.3d at 558 (citing United States v.Kaylor, 877 F.2d 658, 661 (8th Cir. 1989)). Defendants do not define "possess" and "keep" within the Ordinance, and do not provide potential violators with the standards the License Technicians use to enforce the Ordinance. Potential violators are left wondering what connotes "possession" or "keeping," while License Technicians are not expected to reference any guidelines in enforcing an ordinance that is accompanied with criminal sanctions.[2]

---

[2] Canton Ordinance 501.99 provides the penalties for misdemeanors of the third degree: financial sanctions, including but not limited to fines of not more than $500, reimbursement of costs of sanctions, and a jail term of not more than 60 days. *See also* ECF No. 66 at PageID #: 2538, ¶ 56.

11

(5:17CV234)

Enforcement letters have been sent out to potential violators stating that "if you are feeding, you are considered the owner." ECF No. 66-4 at PageID #: 2696. An ordinary individual would not associate the act of feeding with ownership of an animal. The record indicates that Defendant Shirley Moore has also deemed an individual to be the owner of an animal based off of the duration a bowl of food was left for the animal. Affidavit of Sandra Hoover (ECF No. 40-4) at ¶ 6. These issues pertaining to what connotes ownership would not be an issue if the Ordinance was enforced in a way that properly informed an individual of the law they violated. Instead, the record indicates that Defendants have sent out enforcement letters with the pre-2017 ordinance language despite the amendment that deleted the word "own." *See, e.g.*, ECF No. 40-3 at PageID #: 717.[3] Defendants have also used "per household" language in the enforcement letters, although the Ordinance explicitly applies to individuals. ECF No. 66-8 at PageID #: 2750. If the goal of these letters is "compliance," the letters should state the correct language of the law individuals are expected to comply with. ECF No. 71-1 at PageID #: 3186.

Individuals have also been sent enforcement letters for having cats or dogs "habitually residing" or for "feeding" on the property although neither the pre-2017 Ordinance nor the Ordinance have that language. ECF Nos. 66-14 and 66-16. Defendants argue that those terms are used when the License Technician lacks sufficient information to determine whether a person "owns the animals or is harboring, keeping, or possessing strays." Affidavit of Shirley Moore (ECF No. 71-1) at PageID #: 3186-87, ¶ 8. In Defendants' Memorandum in Opposition to the

---

[3] Of the 40 enforcement letters Defendants sent out after the Ordinance was amended, 16 used "own" in them. ECF No. 66-8 at PageID #: 2750-90.

12

(5:17CV234)

within motion, however, Defendants note that feeding stray animals may very well constitute "harboring" or "keeping." ECF No. 44 at PageID #: 748. If that is so, there would be no need for the License Technician to use "habitually residing" or "feeding" in the enforcement letters. These conflicting definitions and explanations give rise to the ambiguity that renders the Ordinance vague to a resident of the City of Canton.

It is true that the Fourteenth Amendment does not require the language to be "mathematically precise," but it does require that individuals are put on adequate notice that their conduct violates the law. Miller v. California, 413 U.S. 15, 28 (1973). When Defendants misstate the law in the enforcement letters and fail to define certain terms, the Court finds that Plaintiffs are not given adequate notice as to what conduct violates the Ordinance.

### 2. Arbitrary enforcement

The Ordinance must also establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. Belle Maer Harbor, 170 F.3d at 556. As a practical matter, the Supreme Court of the United States considers this the most important concern because it "reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject." Columbia Nat. Resources, Inc., 58 F.3d at 1105.

First, Plaintiffs argue that Defendants are acting arbitrarily because they do not identify which animals an individual possesses, which animals an individual keeps, and which animals an individual harbors. ECF No. 40-1 at PageID #: 658. Second, Plaintiffs argue that Defendants are

(5:17CV234)

enforcing the Ordinance against those who have birds or stray cats on their property. ECF No. 40-1 at PageID #: 659-70.

Defendants maintain that they are not obligated to prove which cats or dogs a person possesses, keeps, or harbors. ECF No. 44 at PageID #: 747-48. Defendants also argue that the two letters Plaintiffs rely on to conclude that the Ordinance applies to birds is misguided and that the Ordinance can be construed to apply to stray cats without being void for vagueness. ECF No. 44 at PageID #: 748.

Under Plaintiffs' rationale, a License Technician would have to extend vast amounts of time and resources to deduce which cats or dogs an individual possesses, keeps, or harbors. This is all expected to be done without entering the home and infringing on the homeowner's constitutional right against unlawful search and seizure. Any confusion arising from which animals an individual possesses, keeps, or harbors, could be solved by providing residents of the City of Canton with clear definitions of what "keep" and "possess" mean, and which animals the Ordinance applies to (stray or pets), so that individuals can conform their behavior to comply with the Ordinance. These definitions would also benefit License Technicians, who may reference these definitions to ensure that the Ordinance is uniformly enforced throughout the City of Canton.

Plaintiffs' contention that the Ordinance applies to birds is unavailing. Enforcement Letter 1, ECF No. 40-2 at PageID #: 677, mentions a bird, but, the ordinance at issue in that enforcement letter is not Ordinance 505.14. Enforcement Letter 2, ECF No. 40-2 at PageID #: 685, states that a person with seven dogs and one bird was in violation of the Ordinance. As

(5:17CV234)

noted in Defendant Shirley Moore's deposition, the License Technician simply writes down the complaint she receives. ECF No. 66-3 at Tr. Pg. 26. In the case of Enforcement Letter 2, a bird was only mentioned in the letter because the person complained about the resident having seven dogs and a bird on the property. ECF No. 40-2 at PageID #: 685. The Court finds that these letters are inadequate to support Plaintiffs argument that the Ordinance applies to birds.

Lastly, the Court finds that Defendants' lack of guidelines, rules, and procedures permits License Technicians to enforce the Ordinance in an arbitrary manner. *See* ECF No. 66 at PageID #: 2523, ¶ 8. Defendant Shirley Moore's deposition regarding counting strays in the animal limit is probative:

> **Q.** Depending on the situation on whether the cat is staying around or going? The pure act of feeding them, I think you said is not a violation of the animal limit law? If you have five animals outside, and you just feed outside, and the cat feeds and you pull the food up, that is okay?
>
> **A.** As long as the cat doesn't stay there on your property.
>
> **Q.** After it eats?
>
> **A.** Right.
>
> **Q.** If it like goes to the bathroom in your garden, is that considered staying there after it eats?
>
> **A.** No. Because you can't say where a cat is going to go to the bathroom.
>
> **Q.** I'm saying let's say the cat goes to the bathroom, after it eats, in your garden; is that considered staying?
>
> **A.** No.
>
> **Q.** So it is a durational period of time? If it sits for five minutes that is okay, but not 15 or something like that?

15

(5:17CV234)

      **A.**      Correct.

      **Q.**      Is there a policy that states that?

      **A.**      No.

ECF. No. 66-3 at Tr. Pgs. 63-64.

      The Court finds that Defendants use their own discretion in deciding if an animal is counted in the animal limit and the Ordinance does not provide an ordinary individual with notice that an animal is included in the dog or cat limit count based off of the duration of time it is on the property. Defendants argue that the License Technician follows a process by providing an individual with an enforcement letter that addresses: (1) which ordinance the individual is violating; (2) why they are in violation of the ordinance; and, (3) a phone number the violator can call if they have any questions. ECF. No. 44 at PageID: # 740-41. This process would likely be adequate if the enforcement letters actually used the specific language of the Ordinance and the letters did not strain the definitions of the language in the Ordinance to include conduct an ordinary individual would not expect it to encompass.

      In sum, the Court finds there is merit to the void for vagueness claim. Moreover, when a constitutional violation is likely, there is potential for irreparable injury and Defendants do not have a valid interest in enforcing an unconstitutional ordinance. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("We agree with the district court, however, that there is potential irreparable injury in the form of a violation of constitutional rights. . . . As we have already stated, there is a likelihood that the Ordinance will be found unconstitutional; it is therefore questionable whether the City has any 'valid' interest in

16

(5:17CV234)

enforcing the Ordinance."). In addition, the public interest militates in favor of injunctive relief because "it is always in the public interest to prevent [a] violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998).

## IV. Conclusion

For the reasons explained above, Plaintiffs' Motion for Preliminary and Permanent Injunction (ECF No. 40) is granted. Pursuant to Fed. R. Civ. P. 65, Defendants City of Canton and Shirley Moore, and all those in active concert or participation with them who receive actual notice of this injunctive order, are enjoined from enforcing Canton Ordinance 505.14, which states:

(a) Except as provided in Section 505.15, a person may not possess, keep, harbor, or permit to be possessed, kept, or harbored in or about any dwelling unit or structure under their control a total of more than five dogs or cats, in any combination, over four months of age. "Harbor" means to give shelter or refuge to. "Dwelling unit" and "structure" are defined in Chapter 1123.

(b) Any person who violates any provision of this section is guilty of a misdemeanor of the third degree.

IT IS SO ORDERED.

   September 28, 2018       */s/ Benita Y. Pearson*   
Date                                          Benita Y. Pearson
                                                             United States District Judge