PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. ROTH, *et al.*, | ) |
|     Plaintiffs, | ) CASE NO. 5:17CV0234 |
| v. | ) JUDGE BENITA Y. PEARSON |
| CITY OF CANTON, OHIO, *et al.*, | ) **MEMORANDUM OF OPINION AND ORDER** |
|     Defendants. | ) [Resolving ECF Nos. 120 and 121] |

Pending in this putative class action asserting a pre-enforcement challenge to the constitutionality of Canton Ordinance 505.14, its animal-limit Ordinance, is Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (ECF No. 120). For the reasons set forth in Section I below, the motion is granted.

Also pending is Defendants' Motion for Sanctions (ECF No. 121). The motion is denied for the reasons set forth in Section II below.

**I.**

**A. Standard of Review**

Defendant moves for dismissal on the basis of lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "If a case is moot, the 'case or controversy' requirement of Article III of the Constitution is not satisfied and we do not have jurisdiction to hear the case." *Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019) (citing *Rettig v. Kent City Sch. Dist.*, 788 F.2d 328, 330 (6th Cir. 1986)); *see also Westlake Vinyls, Inc. v. Goodrich Corp.*, No. 5:14-CV-00041-TBR, 2014 WL 2816070, at *5 (W.D. Ky. June 23, 2014) ("If a controversy is moot, a federal

(5:17CV0234)

court has no subject matter jurisdiction over the claim and must accordingly dismiss it.") (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). The standard of review of a Rule 12(b)(1) motion to dismiss depends on whether the defendant makes a facial or factual challenge to subject-matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[ ] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *Walters v. Leavitt*, 376 F. Supp.2d 746, 752 (E.D. Mich. 2005). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F. Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

"A factual attack, on the other hand, raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.' " *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330); *Walters*, 376 F. Supp.2d at 752. Defendants' motion asserts a factual attack on the controlling pleading, *i.e.*, the Fourth Amended Class Action Complaint (ECF No. 66), filed on April 27, 2018. The plaintiff has the burden of proving jurisdiction when subject-matter jurisdiction is challenged. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

**B.     Standing**

Through the within motion to dismiss, Defendants argue that Plaintiffs lack standing. Three (3) of the four (4) Plaintiffs do not live in Canton, and the only one that does has never

2

(5:17CV0234)

been prosecuted or sent an enforcement letter about Canton's animal-limit Ordinance. The Sixth Circuit has held that the standing doctrine, specifically the constitutional requirement for a case or controversy, is a jurisdictional limitation on federal courts. *See* [Kiser v. Reitz, 765 F.3d 601, 606 (6th Cir. 2014)](#); *see also, e.g.*, [Hyman v. City of Louisville, 53 Fed.Appx. 740, 743 (6th Cir. 2002)](#) ("Standing, a jurisdictional element drawn from Article III constitutional requirements as well as prudential considerations, . . . must be present in every case."). The Sixth Circuit has also held that standing, as a challenge to the court's subject-matter jurisdiction, is properly raised through a motion under [Rule 12(b)(1)](#). [Lyshe v. Levy, 854 F.3d 855, 857 (6th Cir. 2017)](#). " 'The party invoking federal jurisdiction bears the burden of establishing' standing." [Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 134 S.Ct. 2334, 2342 (2014)](#) (quoting [Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411-12 (2013)](#)).

### 1. Plaintiffs Julie Roth, Michael Roth, and Joy Wagner

Plaintiffs Julie Roth, Michael T. Roth, and Joy Wagner do not live in Canton, Ohio. As non-residents they have no standing because they cannot allege a credible threat of prosecution against them. On June 26, 2018, Plaintiff Julie Roth and "all other occupants" were evicted from 1260 Fulton Road NW, Canton, Ohio 44703 -- the address listed in the Fourth Amended Complaint ([ECF No. 66](#)) for Plaintiffs Michael T. Roth and Julie Roth. *See* Affidavit of Gino Millin ([ECF No. 79-1](#)); Plaintiffs' Memorandum in Opposition ([ECF No. 81](#)) at PageID #: 3333; *see also* [Tenancy LLC v. Roth, No. 2018-CVG-3235 (Canton Mun. Ct. filed June 4, 2018)](#). This occurred three (3) months before the Court entered its Memorandum of Opinion and Order granting Plaintiffs' Motion for Preliminary and Permanent Injunction ([ECF No. 75](#)).

(5:17CV0234)

"[Plaintiff Julie Roth] currently lives outside of the City of Canton." ECF No. 81 at PageID #: 3326. She moved to 5028 Ridge Avenue SE, which is in Canton Township. Affidavit of John DeMarco (ECF No. 79-2) at ¶ 3; Affidavit of Joel Simpson (ECF No. 79-5) at ¶ 5. In addition, Plaintiff Michael T. Roth ended up going to the Louis Stokes Cleveland VA Medical Center in Cleveland, Ohio. ECF No. 81 at PageID #: 3335. Therefore, it is undisputed that the Roths have lacked residency in the city of Canton since June 2018.[1]

Plaintiff Joy Wagner has never lived in Canton. ECF No. 66 at PageID #: 2526, ¶ 33. Wagner also testified at her deposition that Canton had never prosecuted her or sent her an enforcement letter. Deposition of Joy Wagner (ECF No. 71-3) at PageID #: 3221, Pages 6 and 8. Plaintiffs note, however, that Wagner testified that she feeds and provides winter shelters for feral cats in Canton. ECF No. 71-3 at PageID #: 3221, Page 8.[2] Defendants point out that Wagner does not allege that she feeds more than five animals at a time, which is a required element under the animal-limit Ordinance. Moreover, even under the Previous Ordinance

---

[1] "Plaintiffs acknowledge that at some period of time, Julie and Michael Roth lost standing." ECF No. 129 at PageID #: 3624. We know that was on or about June 26, 2018 for Plaintiff Julie Roth and it was most likely earlier for Plaintiff Michael T. Roth. It is also to be noted that Plaintiffs' counsel moved the Court for leave to amend their complaint for the fourth time, in part, to remove Kaylyn Mazeall as a plaintiff, "as she has moved-out of Canton." ECF No. 63 at PageID #: 1872. According to an e-mail sent by Michela Huth (one of the attorneys for Plaintiffs), Mazeall had "plans to move back, but she does not know when. We will have to remove her from the case." ECF No. 128-1.

[2] It was reported by the Akron Beacon Journal/Ohio.com that the Canton Law Director said Amended Canton Ordinance 505.14 (ECF No. 110-1 at PageID #: 3525) clarifies the language of the Previous Ordinance (ECF No. 24-3), so that feeding stray animals is not interpreted as pet ownership. ECF No. 110-2.

4

(5:17CV0234)

(ECF No. 24-3), Canton never prosecuted or even sent enforcement letters to those who lived outside Canton.

Plaintiff Julie Roth also admits to facts showing that she lacked standing to challenge Canton Ordinance 505.14 on vagueness grounds. Her intent to move back to Canton to live alone with seven dogs and two cats is conduct that, she admits, "clearly violates the Ordinances."[3] And because her conduct "clearly violates the Ordinances," she has no standing to challenge how Canton Ordinance 505.14 might be unconstitutional as it applies to others. With Plaintiff Michael T. Roth not living in the city of Canton, there can be no dispute that Plaintiff Julie Roth lacked standing to challenge Canton Ordinance 505.14 as it applies to others -- even if her claims were not moot in the first place. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

### 2. Plaintiff Toni Leach

Plaintiff Toni Leach lives in Canton, Ohio. But, she also lacks standing to bring a pre-enforcement challenge to Canton Ordinance 505.14 as she fails to allege a credible threat of

---

[3] 306. Plaintiffs acknowledge that Ordinance 505.14 is not facially vague, because *a person living alone*, who owns six dogs or cats, or a combination thereof, clearly violates the Ordinances.

Fourth Amended Complaint (ECF No. 66) at PageID #: 2573 (emphasis in original); *see also* ECF No. 24-1 at PageID #: 289 n. 1.

5

(5:17CV0234)

prosecution. "In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *Kiser*, 765 F.3d at 607. The Supreme Court recognized that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (citation and internal quotation marks omitted); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (A plaintiff satisfies the injury-in-fact requirement when he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.").

Leach claims to have standing to make a challenge to the constitutionality of Canton Ordinance 505.14 as it applies to her because of a conversation she had with Denny Tan, an employee of the Board of Health of the Canton City Health District ("the Board") and a Citation to Appear that she received from the Board[4] about a completely different law, *i.e.*,

---

[4] The Citation came from an entity that is independent from Defendant City of Canton. It came from the Health Commissioner, who works for the Canton City Health District, which is not a "department" of the City of Canton.

Pursuant to Ohio Rev. Code § 3709.01, the state is divided into general health districts (which include townships and villages) and city health districts. Various combinations of districts are permitted. *See, e.g.*, § 3709.01. Any such combination that includes a general health district is also known as a general health district. *See* Ohio Rev. Code §§ 3709.07-.071; Ohio Rev. Code § 3709.10; Op. Att'y Gen. No. 1991-016. Thus, health districts are created as divisions of the state and are considered to be separate political subdivisions. *See State ex rel. Mowrer v. Underwood*, 137 Ohio St. 1 (1940); Op. Att'y Gen. No. 1995-030, at 2-149; Op. Att'y Gen. No. 1980-087, at 2-342; Op. Att'y
(continued...)

6

(5:17CV0234)

Ohio Rev. Code § 3707.01. *See* Citation, dated March 16, 2018 (ECF No. 66-29); Affidavit of Toni Anne Leach (ECF No. 66-27). The parties, however, do not cite any authority that confers standing on a plaintiff to make a pre-enforcement challenge to one law based on a claim that she received an enforcement letter under a completely different law. Leach cannot show she has standing to make a challenge to Canton's animal-limit Ordinance based on a completely different political subdivision warning her that it might impose a tax lien, if she failed to clean up cat litter/cat waste, trash, garbage, rubbish and debris, and stop the open feeding of cats in violation of a state law regarding abatement of nuisances.

**C. Mootness**

There is another justiciability hurdle that Plaintiffs must overcome: mootness. "Mootness has been described as 'the doctrine of standing set in a *time frame*: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (emphasis added) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Courts should not countenance meaningless putative class actions that benefit no one but the attorneys. The mootness requirement ensures that the plaintiff's stake in the outcome of the case remains personal. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "If an

---

[4](...continued)
Gen. No. 2010-022, at 2-152; *see also Onuoha v. Green Cnty. Bd. of Comm.*, No. 3:15-cv-047, 2015 WL 7820633, at * 4 (S.D. Ohio Nov. 12, 2015), *report and recommendation adopted*, No. 3:15-cv-047, 2015 WL 7871352 (S.D. Ohio Dec. 3, 2015) (granting County Board of Commissioners' motion for judgment on the pleadings).

(5:17CV0234)

intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)). It is always the case that "[t]he heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001). An action to enjoin an alleged unconstitutional ordinance becomes moot if the plaintiff no longer lives in the jurisdiction. In *Cooley v. Granholm*, 291 F.3d 880 (6th Cir. 2002), the Sixth Circuit vacated the judgment of the district court. It held that a constitutional challenge by two doctors to Michigan's anti-euthanasia statute was moot when one retired and the other moved out of state with the intention to return to Michigan to practice medicine sometime in the future if he could find a suitable job. The Court of Appeals stated:

> With respect to mootness, the current situations in which the doctors find themselves -- neither practices medicine in Michigan any longer -- means that the case has completely lost "its character as a present live controversy of the kind that must exist if [the Court is] to avoid advisory opinions on abstract propositions of law," *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). They have no "legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

*Id.* at 883 (brackets in original). Plaintiffs' counsel fail to even mention -- let alone attempt to further distinguish -- *Cooley*, which was relied on in the Court's indicative ruling. *See* Memorandum of Opinion and Order (ECF No. 91) at PageID #: 3469-70. Plaintiffs Michael T. Roth and Julie Roth's lack of residency in Canton since June 2018 renders their claims moot.

8

(5:17CV0234)

Legislative action generally moots a case midstream, when a challenged provision is amended during the pendency of the litigation. In such circumstances, courts must determine whether a statute has been "sufficiently altered so as to present a substantially different controversy." *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017) (quoting *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 823 (6th Cir. 2012) (citation omitted)). That is the case here. Plaintiffs' claims are moot because an Amended Ordinance (ECF No. 110-1 at PageID #: 3525) has substantially changed the controversy by overhauling how it is enforced. The Fourth Amended Class Action Complaint (ECF No. 66) alleges that Canton's animal-limit Ordinance is unconstitutionally vague as applied because of confusing enforcement by Defendant Shirley Moore, the license technician, and it lacks definitions of certain terms. The Amended Ordinance sufficiently changed the Previous Ordinance (ECF No. 24-3) and its enforcement, such that it presents a substantially different controversy than the one presented in ECF No. 66.

On July 1, 2019, Canton amended its animal-limit Ordinance. Following the 30-day referendum period, Amended Canton Ordinance 505.14 went into effect on July 30, 2019.[5] It now reads:

**505.14 Keeping More than Five Dogs or Cats**

(a)     Except as provided in Section 505.15, a person may not keep or harbor in or about any dwelling unit or structure a total of more than five dogs or cats, in any combination, over four months of age. "Keep" and "Harbor" have the same meaning as in Ohio Revised Code 955.28. "Dwelling unit" and "structure" are defined in Chapter 1123.

---

[5] Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (ECF No. 120) was filed two (2) days later.

9

        (b)       Notwithstanding 505.19, only the Police Department or the Law Department may enforce this section.

ECF No. 110-1 at PageID #: 3525.[6] Plaintiffs contend the Amended Ordinance lacks guidelines, rules or procedures as to what acts are specifically prohibited. It specifically states, however, that "keep" and "harbor" are defined exactly as Ohio's courts do so when interpreting Ohio Rev. Code § 955.28, Ohio's dog-bite statute. *Beckett v. Warren*, 124 Ohio St.3d 256, 258 ¶¶ 10-11 (2010). Merely feeding a stray animal or allowing it to temporarily stay on one's property is insufficient to be considered a harborer. *Godsey v. Franz*, No. 91WM000008, 1992 WL 48532, *4 (Ohio App. 6th Dist. March 13, 1992). One may only "harbor" an animal under Ohio law if the animal lives at one's premises and they acquiesce to its presence. *See e.g.*, *State v. Chambers*, No. CA2010-06-136, 2011 WL 882112, *2 ¶ 9 (Ohio App. 12th Dist. March 14, 2011); *Flint v. Holbrook*, 80 Ohio App.3d 21, 25 (1992). Nor can that person be a "keeper" of a stray because a "keeper" is the person having physical charge or care of the animal. *State v. Walston*, 136 N.E.3d 21, 25 ¶23 (Ohio App. 12th Dist. 2019).

---

    [6] Plaintiffs' counsel are correct that Defense counsel, on two (2) occasions, did not timely inform them that Canton's animal-limit Ordinance had been amended. ECF No. 126 at PageID #: 3596-97. Had Defense counsel informed Plaintiffs' counsel of the 2017 amendment to Canton Ordinance 505.14, there would not have been a need for Plaintiffs to file a Motion for Leave to Amend Complaint (ECF No. 24).
    According to ECF No. 110-1, Canton conducted a first reading of the Amended Ordinance on June 17, 2019. By that date, the parties had decided to mediate (ECF No. 97) and a mediator had been designated (ECF No. 106). On July 2 and 3, 2019, Attorney Huth apparently emailed Defense counsel asking for a copy of the Amended Ordinance, after she read in the news that it had been amended. According to Plaintiffs' counsel, Defense counsel never responded. On July 9, 2019, Attorney Huth finally obtained a copy of the Amended Ordinance directly from the City of Canton clerk, through a public record request. ECF No. 126 at PageID #: 3597.

(5:17CV0234)

Finally, subsection (b) of Amended Canton Ordinance 505.14 removed the license technician from the enforcement process[7] and vests the enforcement duties solely with the Police Department and the Law Department.

**II.**

Defendants move the Court pursuant to 28 U.S.C. § 1927 and the Court's inherent authority to sanction Plaintiffs' counsel for a pattern of misconduct in the case at bar. Specifically, Defendants contend Plaintiffs' counsel:

(1) Failed in their obligation to inform this Court and the Court of Appeals for the Sixth Circuit of facts indicating the case may be moot;

(2) Knowingly made a false material statement of fact to this Court; and,

(3) Repeatedly violated the Court's rules regarding the confidentiality of mediation discussions.

Defendants request a sanctions award of dismissal with prejudice, attorney's fees, and costs.

**A.     Standard of Review**

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute holds an attorney personally liable for excess costs attributable to her misconduct.

---

[7] Defendant Shirley Moore, the license technician who sent every one of the enforcement letters about which Plaintiffs complain, resigned on July 3, 2019 and the now vacant position is scheduled to be eliminated altogether. ECF No. 120 at PageID #: 3563 n. 42.

(5:17CV0234)

As the Court of Appeals for the Sixth Circuit stated in *Milner v. Biggs*, 566 Fed.Appx. 410 (6th Cir. 2014),

> Sanctions under § 1927 may be awarded against an attorney for conduct that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see also Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 396 (6th Cir. 2009). Section 1927 sanctions are appropriate when counsel "objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios*, 465 F.3d at 646 (internal quotation marks omitted). An award of fees under § 1927 requires a showing of "more than negligence or incompetence" but "less than subjective bad faith." *Hall*, 595 F.3d at 276 (internal quotation marks omitted); *see also Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007) ("To be sure, a finding of bad faith is not a necessary precondition . . . to a determination of § 1927 sanctionability."). The purpose of a sanctions award under this provision is to "deter and punish those who abuse the judicial process," *Red Carpet Studios*, 465 F.3d at 645, not to compensate the moving party, *id.* at 647.

*Id.* at 413. Moreover, "[i]t is the duty of counsel to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness." *Arizonans for Official English*, 520 U.S. at 68, n. 23 (quoting *Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) (emphasis in original)).

Federal courts also have inherent powers to sanction, deny recovery, or shift fees to address unreasonable and vexatious conduct that unnecessarily multiplies proceedings or delays or increases costs. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court emphasized that the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation. In *Chambers*, the Supreme Court affirmed the district court's award of attorney's fees and expenses totaling $996,644.65 for the defendant's series of meritless motions and pleadings and delaying actions. *Id.* at 38. However, the Supreme Court stated that

12

"the court ordinarily should rely on the Rules [and statutes] rather than the inherent power. It noted that "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" in imposing appropriate sanctions. *Id. at 50*.

The Court of Appeals for the Sixth Circuit stated in *Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 93-94 (6th Cir. 1988), that, absent Congressional authorization, federal courts may exercise inherent powers to award attorney's fees in "narrowly defined circumstances." When an attorney or litigant has demonstrated bad faith in the conduct of litigation, the court has the inherent authority to assess an award of attorney's fees. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980). If the district court uses its inherent powers to sanction, it must find that the questioned conduct constitutes or is tantamount to bad faith. *Id. at 767*. Attorney's fees have also been awarded under inherent authority "in the interest of justice" with no finding of bad faith. *Ray A. Scharer and Co., Inc. v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 320 (6th Cir. 1988).

In *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002), the Sixth Circuit held that a district court has the inherent authority to impose an award of attorney's fees and other sanctions against a party in its discretion, if: (1) the claim asserted by the party was meritless; (2) counsel knew or should have known that the claim was meritless; and (3) the claim was filed for an improper purpose such as harassment or delay. *Id. at 519-24*. "In this Circuit, 'bad faith' is a requirement for the use of the district court's inherent authority, but this Circuit has also upheld the use of such sanctions for conduct that 'was tantamount to bad

13

(5:17CV0234)

faith.'" *Id.* at 519. The moving party must prove by clear and convincing evidence that the other party's actions are entirely without color and are motivated by bad faith. *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) ("courts require clear and convincing evidence before imposing attorneys' fees under their inherent power"); *Autorama Corporation v. Stewart*, 802 F.2d 1284, 1287 (10th Cir. 1986) ("it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that the challenged actions are taken entirely without color and are pursued for reasons of harassment or delay"); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2nd Cir. 1982) ("We have required . . . that there be 'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes."), *cert. denied*, 464 U.S. 818 (1983).

**B.     Whether Plaintiffs' Counsel Violated Their Duty to Disclose That the Roths' Claims Were Moot.**

On June 26, 2018, Plaintiff Julie Roth and "all other occupants" were evicted from 1260 Fulton Road NW, Canton, Ohio 44703 -- the address listed in the Fourth Amended Complaint (ECF No. 66) for Plaintiffs Michael T. Roth and Julie Roth. *See* Affidavit of Gino Millin (ECF No. 79-1); Plaintiffs' Memorandum in Opposition (ECF No. 81) at PageID #: 3333; *see also Tenancy LLC v. Roth*, No. 2018-CVG-3235 (Canton Mun. Ct. filed June 4, 2018). Plaintiff's counsel should have known about the eviction because Attorney Huth entered her appearance as counsel for Julie Roth on June 22, 2018. *See* Notice of Appearance (ECF No. 121-1). This occurred three (3) months before the Court entered its Memorandum of Opinion and Order granting Plaintiffs' Motion for Preliminary and Permanent Injunction (ECF No. 75). Plaintiffs'

14

(5:17CV0234)

counsel respond that "at the time Julie Roth was evicted, and thereafter, the Attorneys were informed by Julie Roth that she wanted to fight the eviction and intended to move back into Canton, either back into her house if the eviction could be vacated, or into a rental." In addition, Plaintiffs' counsel state they "were never told that Michael would not be back in Canton, nor were they told he would not be living with Julie when she either moved into her house in Canton or when she rented within Canton." ECF No. 126 at PageID #: 3592.

Defendants appealed to the Court of Appeals for the Sixth Circuit this Court's ruling granting Plaintiffs' Motion for Preliminary and Permanent Injunction. *See* Notice of Appeal (ECF No. 76). On March 26, 2019, this Court granted Defendants' Motion for an Indicative Ruling (ECF No. 79) and indicated under Fed. R. Civ. P. 62.1 that upon remand from the Sixth Circuit it would:

> grant Defendants' Motion for Relief From Judgment and
>
> issue an order vacating the Court's September 28, 2018 Memorandum of Opinion and Order granting Plaintiffs' Motion for Preliminary and Permanent Injunction (ECF No. 75).

*See* Memorandum of Opinion and Order (ECF No. 91) at PageID #: 3472. The Sixth Circuit remanded the appeal to the District Court for further proceedings without opposition from Plaintiffs' counsel. *Michael Roth v. City of Canton, Ohio*, No. 18-4059 (6th Cir. March 28, 2019) (ECF No. 92). This Court granted Defendants' Motion for Relief From Judgment and issued an Order vacating the September 28, 2018 Memorandum of Opinion and Order. *See* Order (ECF No. 94). Thereafter, the Court of Appeals dismissed the appeal upon stipulation of

15

(5:17CV0234)

the parties. *Michael Roth v. City of Canton, Ohio*, No. 18-4059 (6th Cir. May 10, 2019) (ECF No. 96). Plaintiffs' counsel had a duty to inform this Court and the Sixth Circuit "without delay" that the Roths no longer lived in Canton because their move indicated that their claims "may" -- and, in fact, proved to be -- moot.

    **C.    Whether Plaintiffs' Counsel Misrepresented to the Court That the Roths Still Lived in Canton.**

On July 5, 2018 -- a mere nine (9) days after Plaintiff Julie Roth and "all other occupants" were evicted from 1260 Fulton Road NW, Canton, Ohio 44703 -- Plaintiffs' counsel filed a Reply to Defendants' Opposition Motion for Class Certification, in which they wrote: "Roth is subject to enforcement and prosecution as a result of feeding cats, and living in a house with more than one person who also owns some of the animals." ECF No. 73 at PageID #: 3240. Plaintiffs' counsel "acknowledge that was a misstatement, but it was not made to deceive." ECF No. 126 at PageID #: 3594. Rule 3.3(a)(1) of the Ohio Rules of Professional Conduct provides: "A lawyer shall not *knowingly* . . . make a false statement of fact or law to a *tribunal* . . . . (emphasis in original). Given the acknowledgment of Plaintiffs' counsel, the Court finds their declaration to the Court that the Roths still lived in Canton was not intended as a misrepresentation.

    **D.    Whether Plaintiffs' Counsel Violated Local Rule 16.6(h).**

The case at bar was referred to mediation after the Sixth Circuit dismissed the appeal. *See* Order of Reference to Alternative Dispute Resolution ("ADR") (ECF No. 98). Local Rule 16.6(h) provides, in pertinent part: "The entire mediation process is confidential and privileged

(5:17CV0234)

to the extent provided under Ohio Rev. Code ch. 2710 and Sixth Circuit Law. The parties and the Mediator may not disclose information regarding the process, including settlement terms, to the Court or to third persons *unless all parties otherwise agree*. . . ." (emphasis added).

Defendants argue Plaintiffs' counsel have purposefully twice violated Local Rule 16.6(h). The mediator instructed the parties to file a joint notice to extend the completion date for mediation. Instead, Plaintiffs' counsel filed a Motion for One-Month Extension of Time to Complete Mediation (ECF No. 107) -- without Defendants' approval or knowledge of its contents -- that revealed Defendants' initial mediation position regarding attorney's fees. In response, Defendants filed a Motion to Strike Plaintiffs' Motion (ECF No. 108). The Court granted the jointly requested extension and struck from the record the balance of Plaintiffs' motion. Order (ECF No. 109).

Second, Defendants contend Plaintiffs' counsel violated Local Rule 16.6(h) again in Plaintiffs' Motion to Expand the Scope of ADR or, in the Alternative, to Withdraw the Case From ADR (ECF No. 110), filed on July 5, 2019. Plaintiffs' counsel (1) disclosed part of another confidential e-mail sent by Defense counsel regarding proposed changes to Canton's animal-limit Ordinance, *see* ECF No. 110 at PageID #: 3521, and (2) preemptively blamed Defendants if mediation failed and the case proceeded, ECF No. 110 at PageID #: 3522.[8] According to Plaintiffs' counsel, after she read in the news that it had been amended on July 2

---

[8] Defendants filed a Motion to Strike and for Sanctions (ECF No. 112) that the Court "denied without prejudice to reconsideration *after meaningful* ADR," Non-document Order dated July 10, 2019 (emphasis in original).

(5:17CV0234)

and 3, 2019, Attorney Huth emailed Defense counsel requesting a copy of the Amended Ordinance. Defense counsel apparently never responded. ECF No. 126 at PageID #: 3597.

### E. Defendants' request for sanctions is denied.

While the Court does not arrive at its decision lightly, it denies Defendants' request for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. Plaintiffs' counsel did not multiply the proceedings in a manner so as to warrant 28 U.S.C. § 1927 sanctions. In the informed discretion of the Court, it also declines to impose sanctions under its inherent power because the Court finds Plaintiffs' counsel did not engage in bad faith conduct in the litigation. It is obvious from a review of the record that there is plenty of blame to go around; therefore, an award of attorney's fees to Defendants would not be just.

### III.

Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (ECF No. 120) is granted.

Defendants' Motion for Sanctions (ECF No. 121) is denied.

IT IS SO ORDERED.

| March 17, 2020 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |